UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BAPTIST HOSPITAL, INC.,
d/b/a BAPTIST LIFEFLIGHT,**

      **Plaintiff,**

vs.                                                 Case No. 3:07cv104/MCR/EMT

**CJ CRITICAL CARE TRANSPORTATION
SYSTEMS OF FLORIDA, INC.,**

      **Defendant.**
                                          /

**O R D E R**

In this action defendant CJ Critical Care Transportation Systems of Florida, Inc. ("CJ Critical Care" or "defendant") sues plaintiff Baptist Hospital, Inc., d/b/a Baptist Lifeflight ("Lifeflight" or "plaintiff").[1] Pending are CJ Critical Care's "Amended Motion to Dismiss" pursuant to Fed.R.Civ.P. 12(b)(6) and its "Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)," to which Lifeflight has responded in opposition.[2] For the reasons stated below the court DENIES defendant's motions.

**Background**

Lifeflight states in its complaint that it is an air ambulance services provider based in Escambia County, Florida, and Mobile County, Alabama. Lifeflight alleges that it has existing business relationships with nearly all of the hospitals in southwest Alabama for its

---

[1] This case originated in state court and was removed to this forum based on diversity jurisdiction. By prior order the court denied plaintiff's motion to remand.

[2] Amended Motion to Dismiss at doc. 13 (memorandum at doc. 11) and Motion to Transfer Venue at doc. 7 (memorandum at 8). Responses in opposition at docs. 18, 16, respectively.

services. According to Lifeflight, in April 2004 the parties entered into an "Air Medical Agreement" ("Agreement") pursuant to which CJ Critical Care agreed to supply aviation services to Lifeflight, including providing a helicopter and pilot from a location in Mobile, Alabama.[3] Lifeflight asserts that under the Agreement it retained operational control of all aspects of the flight program at all times; CJ Critical Care operated only as a vendor and was not a partner or joint venturer in the operation of Lifeflight. Lifeflight alleges that CJ Critical Care misappropriated Lifeflight's employee and client lists, as well as certain other proprietary and/or confidential information, in order to set up and operate air ambulance services in direct competition with Lifeflight. As a result of CJ Critical Care's actions, Lifeflight maintains, it has lost approximately one-half of its employees and a yet-to-be determined number of clients, to the substantial detriment of its business operations. In its complaint, Lifeflight asserts two claims: (1) tortious interference with existing business relationships (for which it seeks judgment for damages, attorneys' fees and costs, and interest); and (2) temporary and permanent injunctive relief.

CJ Critical Care moves for dismissal on the ground that Lifeflight's tortious interference claim is barred by Florida's economic loss rule.[4] According to CJ Critical Care, the economic loss rule is "broad enough to bar this action which is nothing more than an attempt to cure what Plaintiff now perceives as a defect in the Agreement. Merely by 'labeling' its action as one in [tort] rather than one in [contract] . . . does not allow the Plaintiff to avoid the application of the economic loss rule."[5] By separate motion, CJ

---

[3] Lifeflight alleges that on January 18, 2007, it received notice that CJ Critical Care would terminate the agreement effective sixty days from that date. The Agreement apparently was terminated on March 18, 2007.

[4] According to CJ Critical Care, although the complaint asserts a claim for "tortuous [sic] interference with *contractual* relations," it "utterly fails to allege that any of [the allegedly tortious] conduct breaches any provisions of the agreement between the parties . . . ." (Doc. 11 at 2) (emphasis added). CJ Critical Care contends that indeed it was "perfectly entitled by the terms of the Agreement to engage in the conduct alleged in the Complaint" (id. at 3) and that nothing in the Agreement required it "to maintain the confidentiality of any information received from [Lifeflight] or learned as a result of participating in the air medical program established pursuant to the Agreement. The Agreement contains neither a covenant not to compete nor a covenant not to solicit either customers or employees." (Id. at 4).

[5] Doc. 11 at 6. The original reads "[m]erely by 'labeling' its action as one in contract rather than one in tort . . . does not allow the Plaintiff to avoid the application of the economic loss rule."

Critical Care alternatively seeks transfer of this action to the Southern District of Alabama on the ground the action could have been initiated in that district and the "balance of conveniences" strongly favors transfer.

In opposition to the motion to dismiss, Lifeflight responds that its complaint alleges an independent tort against CJ Critical Care, its former vendor, that does not involve a claim based upon the parties' now-terminated contract. The tortious interference claim does not involve any element related to performance of the Agreement, and Lifeflight does not seek contract damages. Therefore, according to Lifeflight, Florida's economic loss rule does not apply and dismissal on that ground would be improper. Lifeflight also opposes transfer to the Southern District of Alabama, arguing that CJ Critical Care has not shown "that the conveniences of witnesses and party and the interests of justice trump the mandatory forum selection clause"[6] set forth in the Agreement.[7]

**Discussion**

Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the material allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Sheuer v. Rhodes, 416 U.S. 232, 236 (1974); Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999). To satisfy the pleading requirements of Fed.R.Civ.P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. See Swierkiewicz, 534 U.S. at 511(quoting Scheuer,

---

[6] Doc. 16 at 12.

[7] Paragraph 17.5 of the Agreement, entitled "Governed by Law," provides that "[t]he provisions of the Agreement and all rights and obligations of this Agreement shall be governed by, and construed in accordance with the laws of the State of Florida and the United States of America. In the event of any controversy, claim or dispute arising in connection with this Agreement or subject matter thereof, the parties agree that they will be subject to the jurisdiction of the Circuit Courts located in Escambia County, Florida." (Doc. 1 at 38).

Case No. 3:07cv104/MCR/EMT

416 U.S. at 236); <u>United States v. Baxter Int'l, Inc.</u>, 345 F.3d 866, 881 (11th Cir. 2003). Until the recent Supreme Court decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), courts routinely followed the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. Rejecting a literal reading of the "no set of facts" rule, the Court held in <u>Twombly</u> that although a complaint need not plead "detailed factual allegations," in order to survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . "; in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S.Ct. at 1964-65. The Court further instructed that the "no set of facts" language was "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 1969.

Under Florida law, to establish a claim of tortious interference with existing business relationships a plaintiff must show (1) the existence of business relationships between plaintiff and third parties; (2) the defendants' knowledge of those business relationships; (3) the defendants' intentional and unjustified interference with those business relationships; and (4) damages resulting from the defendants' interference. <u>See Breckenridge Pharmaceutical, Inc. v. Metabolite</u>, 444 F.3d 1356, 1362 (11th Cir. 2006) (citing <u>Gossard v. Adia Servs., Inc.</u>, 723 So.2d 182, 184 (Fla. 1998)). The court concludes that, as set forth in the preceding section, under notice pleading Lifeflight's complaint adequately alleges "enough facts to state a claim to relief [for tortious inteference with existing business relationships] that is plausible on its face." <u>Twombly</u>, 127 S.Ct. at 1964-65.

The court further concludes that Florida's economic loss rule does not bar Lifeflight's claim. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." <u>Indemnity Insurance Co. of North America v. American Aviation, Inc.</u>,

891 So.2d 532, 536 (Fla. 2004).  In Indemnity Insurance, the Supreme Court of Florida explained that the economic loss rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." Id. Additionally, the Court noted that "[t]he prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id. (citation omitted);  Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524, 527 (Fla. 1st DCA  1997) (observing that the economic loss rule "is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies.").  While there is a general prohibition against recovery of economic damages in a tort action, under Florida law such recovery nevertheless is allowed when the claim involves a tort committed independently of a breach of contract. Id. at 537; HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238, 1239 (Fla. 1996) (stating that "[t]he economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action.  Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract."); Eclipse Medical, Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1353-54 (S.D.Fla. 1999) (indicating that a claim for tortious interference can survive the application of the economic loss rule where the facts alleged in the tort claim are separate and distinct from those necessary to prove breach of contract). Thus certain intentional torts requiring proof of intent, including the tort of intentional interference, "generally remain viable either in the products liability context or if the parties are in privity of contract.  As noted by one commentator a rule barring recovery for economic loss 'is not an escape hatch from intentional commercial torts.'" Indemnity Insurance, 891 So.2d  at 543, n.3 (quoting Hall J. Schwiep Economic Loss Rule Outbreak: The Monster That Ate Commercial Torts, Fla. B.J., Nov. 1995 at 34, 42).

  As acknowledged by CJ Critical Care, in its complaint Lifeflight does not allege any breach of the Agreement.  Rather, Lifeflight alleges that CJ Critical Care misappropriated

employee lists, customer lists, and certain confidential and/or proprietary information to which CJ Critical Care had access due to its contractual relationship with Lifeflight. According to Lifeflight, CJ Critical Care did so in order to set up and operate a competing air ambulance operation, thereby interfering with Lifeflight's business relationships with its existing customers. These allegations constitute a quintessential claim in tort, not contract, and are separate and distinct from those necessary to prove breach of contract. See Eclipse Medical, Inc., 262 F.Supp.2d at 1353-54. In short, the court concludes that Lifeflight has alleged conduct giving rise to an independent, intentional tort by CJ Critical Care that may be distinguished from acts related to performance of the Agreement. As previously noted, Florida law permits recovery of economic damages in a tort action when the claim involves a tort committed independently of any breach of contract. Indemnity Insurance, 891 So.2d at 537; HTP, Ltd., 685 So.2d at 1239. CJ Critical Care's motion to dismiss therefore is denied.

<u>Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)</u>

CJ Critical Care also moves to transfer venue to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a). A district court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a). To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties.[8] See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). Indeed, the Eleventh Circuit has instructed that district courts should be cautious in

---

[8] The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency. See Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F.Supp. 281, 282 (M.D.Fla. 1996).

Case No. 3:07cv104/MCR/EMT

transferring actions, stating that "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." Robinson, 74 F.3d at 260.

For the purpose of this discussion, the court shall assume that the instant action could have been brought in the Southern District of Alabama.[9] Accordingly, the court proceeds to consideration of whether the convenience of the parties and interests of justice favor transfer.

Lifeflight argues that CJ Critical Care has failed to meet its burden of showing that the Agreement's "mandatory forum selection clause" should bow to the "balance of conveniences." In its order denying the motion to remand, however, the court rejected Lifeflight's proposition that Paragraph 17.5 is a mandatory clause that requires the parties to litigate their dispute in Escambia County Circuit Court. Instead, the court concluded that the provision contains no mandatory language requiring the parties to file their claims only in Escambia County Circuit Court or prohibiting them from filing their claims in courts other than the Escambia County Circuit Court. Further, the court found that Paragraph 17.5 mandated only that the parties consented to jurisdiction in Escambia County Circuit Court and thus could not contest the jurisdiction of that court. Accordingly, although a choice of forum clause ordinarily is "a significant factor that figures centrally in the district court's calculus" in weighing the § 1404(a) factors, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), in this case the court concludes that – to the extent Paragraph 17.5 should be deemed a forum selection clause at all – it is entitled to little, if any, weight. Even so, the court is persuaded that the motion to transfer should be denied.

Many courts in the Eleventh Circuit have recognized that "[t]he most important factor

---

[9] The Southern District of Alabama would have original subject matter jurisdiction over this cause based upon diversity. 28 U.S.C. § 1332(a). Lifeflight is a Florida corporation with its principal place of business in Escambia County, Florida. CJ Critical Care is a Pennsylvania corporation having, for purposes of 28 U.S.C. § 1332, its principal place of business in Pennsylvania. Moreover, there is no dispute that the amount in controversy exceeds $75,000 exclusive of interest and costs. Additionally, if a substantial part of the events related to this cause of action occurred in Alabama (an issue that Lifeflight apparently does not concede), venue would appear to be proper there. 28 U.S.C. § 1391(a).

Case No. 3:07cv104/MCR/EMT

in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." Insuracorp, Inc. v. American Fidelity Assur. Co., 914 F.Supp. 504, 506 (M.D.Ala. 1996); see also Bartronics, Inc. v. Power-One, Inc., 510 F.Supp.2d 634, 638 (S.D.Ala. 2007); Bixy, Inc. v. KBI Holdings, L.L.C., 2007 WL 3407623, *3 (N.D.Ga. 2007) (citing Electronic Trans. Network v. Katz, 734 F.Supp. 492, 501-02 (N.D.Ga. 1989)); Meterlogic, Inc. v. Copier Solutions, Inc., 185 F.Supp.2d 1292, 1299 (S.D.Fla. 2002). Here, CJ Critical Care argues that virtually all of the potential non-party witnesses whom Lifeflight alleges were involved in or affected by the alleged acts of tortious interference, including numerous hospital clients and employees, are located in southwest Alabama. According to CJ Critical Care, securing the attendance in Florida of witnesses employed by Lifeflight's hospital clients for depositions or hearings would be "substantially more difficult and expensive than securing their attendance for proceedings in the Southern District of Alabama."[10] Similarly, CJ Critical Care contends that it anticipates that many of the party witnesses will be located in the Mobile, Alabama, area.

The court concludes that CJ Critical Care has failed to make an adequate showing that venue in the Southern District of Alabama will be materially more convenient for the witnesses than venue here in the Northern District of Florida.[11] As Lifeflight states, the distance between this federal courthouse and the courthouse in Alabama is slightly less than sixty miles.[12] The court also notes that the electronic mapping service maps.google.com reflects that it takes approximately one hour to drive this distance, which is consistent with the court's experience. CJ Critical Care has not cited a single case in

---

[10] Doc. 8 at 5.

[11] CJ Critical Care has not identified with any specificity the locations of any of the potential witnesses and thus the distances they might have to travel to the courthouse in Mobile or to proceedings in other locations. In assessing the convenience to witnesses, therefore, the court compares what is reliably known to it – the distance between the federal courthouses in Mobile and Pensacola.

[12] Maps.google.com places the distance between the Pensacola and Mobile courthouses at 59.9 miles. Maps.google.com also reflects that the University of South Alabama Medical Center, which CJ Critical Care cites in its memorandum, is approximately 64.2 miles distant from the Pensacola courthouse. MedStar EMS of Baldwin County, also cited by CJ Critical Care, is located approximately 29.7 miles from this courthouse and 36.3 miles from the federal courthouse in Mobile.

which a comparable distance of sixty miles has served as the basis of a transfer pursuant to § 1404(a). To the contrary, many courts have held that traveling a similar distance is not the type of "inconvenience" that supports a motion to transfer under this section. See, e.g., People of State of New York v. Operation Rescue National, 69 F.Supp.2d 408 (W.D.N.Y. 1999) (refusing to transfer case approximately sixty miles) (collecting cases); Carlile v. Continental Airlines, Inc., 953 F.Supp. 169, 171 (S.D.Tex. 1997) (refusing to transfer case approximately fifty miles); Market Transition Facility of N.J. v. Twena, 941 F.Supp. 462, 467-68 (D.N.J. 1996) (refusing to transfer case from Newark to Brooklyn); Lee v. Ohio Cas. Ins. Co., 445 F.Supp. 189 (D.Del.1978) (refusing transfer because travel of sixty miles not unduly burdensome to parties and witnesses); and Paragon Int'l, N.V. v. Standard Plastics, Inc., 353 F.Supp. 88, 92 (S.D.N.Y.1973) (refusing transfer case from Southern District of New York to Philadelphia).[13] Accordingly, the court finds that the convenience of witnesses does not favor transferring this case to the Southern District of Alabama.

The court also disagrees with CJ Critical Care's contention that the convenience of the parties favors transfer. According to CJ Critical Care, both parties conduct their air ambulance operations in Mobile, Alabama; CJ Critical Care's principal place of business is in West Mifflin, Allegheny County, Pennsylvania; and Lifeflight's principal place of business is in Escambia County, Florida. CJ Critical Care argues that under these facts the "parties' respective burdens will be closer to equal" if the case proceeds in the Southern District of Alabama.[14] Given that both parties conduct their air ambulance operations from Mobile, there is no difference in convenience in that regard. Furthermore, maps.google.com reflects that the distance between West Mifflin, Pennsylvania, and Mobile, Alabama, is 998 miles while the distance between West Mifflin and Pensacola,

---

[13] CJ Critical Care also submits that obtaining documents from Lifeflight's hospital clients would require "subpoenas issued from and served in the Southern District of Alabama." (Doc. 8 at 5). Pursuant to Fed.R.Civ.P. 45(b)(2), however, a subpoena "may be served at any place within the district of the court by which it is issued, *or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, inspection, copying, testing, or sample specified in the subponea* . . . ." Fed.R.Civ.P. 45(b)(2) (emphasis added). The subpoenas may be issued from this district, therefore, and served within 100 miles, which should include most if not all of the greater Mobile area.

[14] Doc. 8 at 6.

Case No. 3:07cv104/MCR/EMT

Florida, is 993 miles.  Thus, while for Lifeflight the Pensacola, Florida, venue obviously is somewhat more convenient than the Mobile, Alabama, venue, there appears to be no significant difference in convenience between the two venues to CJ Critical Care.

Finally, the court concludes that CJ Critical Care has cited nothing that supports transfer of this case to the Southern District of Alabama in the interest of justice.  As Lifeflight notes, CJ Critical Care offers no basis for its conclusion the operative facts occurred in the Mobile, Alabama, area.  Similarly, although CJ Critical Care submits that the public interest requires transfer to the Alabama forum (because, in the event Lifeflight's requested injunctive relief is granted the cost of air ambulance services in Alabama, but not Florida, would be impacted), this argument is wholly unsupported and merely speculative.

For all of the foregoing reasons, the court finds that CJ Critical Care has failed to meet its burden of showing the § 1404(a) factors favor transfer of this action to the Southern District of Alabama.  CJ Critical Care's motion to transfer is therefore DENIED.

Accordingly, it is ORDERED:

1. Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (doc. 13) is DENIED.

2. Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) (doc. 7) is DENIED.

**DONE and ORDERED** this 30th day of November, 2007.

　　　　　　　　　　　　　　　　　*s/ M. Casey Rodgers*
　　　　　　　　　　　　　　　　　**M. CASEY RODGERS**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**